UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
*Plaintiff*,
v.

AHMET KEREM KORKAYA,
*Defendant*.

Case No. 26-cr-20306
Hon. Judith E. Levy

# DEFENDANT AHMET KORKAYA'S REPLY BRIEF TO THE GOVERNMENT'S OPPOSITION TO HIS MOTION TO MODIFY CONDITIONS OF RELEASE

Mr. Korkaya moved this Honorable Court to modify his conditions of release by removing the requirement that he wear a tether.

The Bail Reform Act favors presumes release on personal recognizance and it is what "shall" be ordered unless it is determined "that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If it is determined that personal recognizance will not reasonably assure person's appearance as required or will endanger the safety of any other person or the community, then pretrial release shall be ordered "subject to the least restrictive further condition, or combination of conditions, that … will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(c)(1)(B).

The Government argues that Mr. Korkaya's motion is not proper because 18 U.S.C. § 3142(c)(3) "does not allow for boundless, standalone judicial review." Further, the Government complains that Mr. Korkaya's motion "is the sixth motion filed in this case in the last two months" despite this being Mr. Korkaya's first such motion requesting judicial review of his bond conditions. The Bail Reform Act makes clear, however, that each defendant's pretrial release is to be determined on an individual basis. (*See* 18 U.S.C. § 3142(g), which repeatedly states "the person.") Whatever bond modification requests have been made by other defendants have no bearing on Mr. Korkaya.

Mr. Korkaya has demonstrated that he has good moral character and is not dangerous. He has submitted a number of letters of support from a variety of individuals – professors, colleagues, and his current employer. Unable to rebut this demonstration of good present-day moral character, the government repeatedly points to allegations that are at least two years old. The most recent thing the government has pointed to is his views of Zionism being expressed in private text messages found on his phone. The government has not pointed to any steps or overt acts taken by Mr. Korkaya to act on those views. His home was unexpectedly searched when he was arrested on June 10, 2026 at 5:00 am. The government claims that a flag hanging on a wall but the photo they attached shows a flag with multiple creases and appears to have been folded in storage. In any event, the

government doesn't claim to have found any weapons or items indicating an ability or even intent to act on the views they allege he holds.

The government cites text messages alleging Mr. Korkaya intended to do outrageous things as a doctor, which he would not have had a chance to become for a number of years. While they point text messages about wanting to be a Hamas doctor, there is no indication he's ever had contact with a member of Hamas or even had a way of getting in touch with one. Regardless, he was suspended from medical school once he was indicted and there is not a chance of him becoming a doctor while this case is pending.

While Mr. Korkaya does have dual citizenship with Turkey by virtue of having been born there, his Turkish passport expired in 2017 and he never attempted to renew it. In fact, Mr. Korkaya voluntarily brought this expired Turkish passport and handed it over to the Government at his initial appearance in this district despite there being no court order that he do so. He has only travelled on his US passport, which is also in the government's possession. Mr. Korkaya visited Turkey for ten days before going to Cairo, Egypt as a part of a study abroad program in January 2020. It was cut short and he returned home on an emergency repatriation flight due to the outbreak of COVID. Before that, he visited Turkey with his parents in 2014 while a student in high school. The only other foreign

identification he's had was a student ID he received while in Cairo. He voluntarily gave that to the government as well. Mr. Korkaya is not a flight risk.

The allegations in this case were also the subject of an investigation by the Michigan Department of Attorney General. They sought an investigative subpoena to take testimony from Mr. Korkaya, who filed objections to it in Michigan's 3rd Circuit Court. A week before a hearing on Mr. Korkaya's objections and the state's motion to compel his testimony, Michigan Assistant Attorney General Daniel Grano informed counsel that they had discovered new evidence, would be withdrawing their motion, and will be in touch "when and if [they] are ready to charge." (Exhibit 1 – AG E-Mail). That email was sent August 28, 2025. Aware of the potential of criminal charges, Mr. Korkaya continued to live his life. He did not attempt to flee, destroy evidence, or in any way attempt to obstruct whatever investigations were taking place. He never left the country. Likewise, after being released from custody in Wisconsin on June 10, 2026, Mr. Korkaya made no attempt to flee. Released on personal recognizance pursuant to 18 U.S.C. § 3142(b), Mr. Korkaya drove to this district for his initial appearance. In fact, he brought everything he thought could possibly be construed as a foreign travel document down to a student ID, even if expired, to surrender to the government. These documents are all currently in the government's possession. Mr. Korkaya has no documents with which he could leave the country.

Mr. Korkaya is not presently a danger to the safety of person or the community. He will appear for all future court appearances, exactly as has done even before being ordered to wear a tether. Mr. Korkaya has complied with all court orders. A tether is not necessary to reasonably assure his appearance and the safety of the community. It is not the least restrictive condition to reasonably assure his appearance and the safety of the community. That can be accomplished through phone monitoring and communications with his pretrial services officer. This Honorable Court has the authority to amend Mr. Korkaya’s bond conditions to remove his tether and should grant Mr. Korkaya’s motion.

Respectfully submitted,

Respectfully Submitted,

*/s/ Jamil Khuja* .

Jamil Khuja
Attorney for Defendant
The Khuja Law Firm, PLLC
1360 Porter St., Ste. 200
Dearborn, MI 48124
(313) 263-3353
jamil@khujalaw.com

DATED: October 27, 2026

CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

*/s/ Jamil Khuja*
Jamil Khuja
Attorney for Defendant
The Khuja Law Firm, PLLC
1360 Porter St., Ste. 200
Dearborn, MI 48124
(313) 263-3353
jamil@khujalaw.com